UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE GONZALEZ,<br><br>　　Petitioner,<br><br>v.<br><br>JANET NAPOLITANO, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>　　Respondents. | Civil Action Number: 2:09-03426<br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**MEMORANDUM OPINION**[1]

## I.  INTRODUCTION

Petitioner's Petition for Review of [the Administrative] Denial of Application for Naturalization (the "Petition") was filed on July 10, 2009. (Doc. No. 1.)

On September 15, 2009, the Respondents filed a Motion to Dismiss for Lack of Jurisdiction Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion" or "Opening Brief"). (Doc. No. 5.) The Motion has been fully briefed. *See* Opposition Brief, (Doc. No. 7); Reply Brief, (Doc. No. 8); Petitioner's Sur-Reply, (Doc.

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein may be inserted. No endorsement of any provider of electronic or other resources is intended by the Court's practice of using hyperlinks.

No. 14).

Having considered the parties' filings, federal constitutional and statutory law and regulations, case law, and persuasive scholarly authority, the Court, for the reasons elaborated below, will **DENY** the Motion.

II.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Jose Gonzalez was born in Panama and is a citizen of Spain. He married a U.S. citizen. His wife filed a petition for the adjustment of his status on his behalf and he was granted Lawful Permanent Resident status based on that application. He was subsequently divorced, and, thereafter, filed a petition for naturalization. The United States Citizenship and Immigration Services ("USCIS") denied his application during 2007 on the grounds that he (allegedly) made false statements in regard to his prior marriage. He subsequently appealed this decision and exhausted available administrative remedies,[2] when USCIS denied his administrative appeal on June 12, 2009 on the merits. On June 24, 2009, USCIS served a notice to appear ("NTA") on Petitioner. The NTA charges that Petitioner is removable pursuant to 8 U.S.C. § 1227(a)(1)(B). Furthermore, on June 24, 2009, the NTA was referred to the Immigration Court in Newark, New Jersey. On July 10, 2009, and pursuant to 28 U.S.C. § 1421(c), Petitioner timely sought *de novo* judicial review of the USCIS's June 12,

---

[2] Respondents do not contest that Petitioner exhausted the administrative review process.

2

2009 denial of his application for naturalization.

It is the Respondents' contention that this Court lacks subject matter jurisdiction to review the agency's denial of the naturalization petition when, as here, removal proceedings are pending against the Petitioner. Second, it is also the Respondents' position that, even if the Court has jurisdiction over the *subject matter*, this Court cannot grant any *relief* on these facts. The Respondents characterize such a result as failure to state a claim upon which relief may be granted, although it would seem that the gravamen of the Respondents' argument is that Petitioner's cause of action lacks the possibility of redress, and therefore Petitioner's case cannot meet the elements of Article III standing.[3] Petitioner rejects both of the Respondents' contentions.

### III. STANDARD OF REVIEW

The Respondents' motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(1) (dismissal based on lack of subject matter jurisdiction). In adjudicating a Rule 12(b)(1) motion, "[a court] review[s] only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court."

---

[3] *See, e.g., Sprint Commc'ns Co. v. APCC Servs., Inc.*, 128 S. Ct. 2531, 2535 (2008) (Breyer, J.) ("[I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly ... traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." (quotation marks and brackets omitted) (citing U.S. CONST. art. III)).

3

*Common Cause of Penn. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009). "[T]he parties invoking the federal courts' jurisdiction, bear the burden of establishing their standing." *Common Cause of Penn.*, 558 F.3d at 257.

"Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may decide for itself the factual issues which determine jurisdiction. When resolving a factual challenge, the court may consult materials outside the pleadings...." *Koronthaly v. L'Oreal USA, Inc.*, Civil Action No. 07-5588, 2008 WL 2938045, at *2 (D.N.J. July 29, 2008) (citations omitted).

Respondents' Motion is also brought pursuant to Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.*

4

Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In considering a Rule 12(b)(6) motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). Generally, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV. ANALYSIS

Three statutory provisions are key to adjudicating this case.

First, 8 U.S.C. § 1421(a) provides: "Authority in Attorney General. The *sole authority*

to naturalize persons as citizens of the United States is conferred upon the Attorney General." *Id.* (emphasis added).

Second, 8 U.S.C. § 1421(c) provides: "Judicial review. A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."

Third, 8 U.S.C. § 1429 provides: "[N]o application for naturalization shall be *considered* by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act ...." *Id.* (emphasis added).

The NTA, which initiates removal proceedings, is a warrant of arrest pursuant to 8 C.F.R. § 318.1. Under Section 1429, it follows that the Attorney General (the "AG") may not "consider" such a person's "application for naturalization." Moreover, Congress has lodged in the AG the "sole" authority to naturalize persons. 8 U.S.C. § 1421(a). On this basis, Respondents argue that if the AG may not naturalize a person in the midst of removal proceedings, i.e., a person such as the Petitioner, and if the AG is the exclusive authority who may do so because the AG has "sole" authority to naturalize persons, then this Court has no

6

authority to do so. From which it seems to follow that this Court cannot order the AG to naturalize Petitioner. If this Court cannot grant relief, if it cannot neither naturalize Petitioner nor order the AG to do so, then Motion must be granted, and the Petition dismissed.

Petitioner relies on Section 1421(c) which grants this Court jurisdiction of timely filed petitions to review final[4] administrative denials of applications for naturalization. It is not contested that Petitioner filed an administrative application for naturalization; it was finally reviewed by USCIS, and that his petition for judicial review was timely filed. Petitioner argues that no statute expressly divests this Court of jurisdiction under Section 1421 or otherwise. And therefore the Court should proceed to the merits of his petition.

The purported conflict between Sections 1421 and 1429 has divided federal courts since Congress, by statute, took authority to naturalize persons away from the federal courts, which had in times past functioned as immigration courts, and vested the power to naturalize persons in the AG. *See* Immigration Act of 1990 ("IMMACT"), Pub. L. No. 101-649, § 401, 104 Stat. 4978. In regard to the conflict between the two provisions, the Third Circuit has expressly reserved on this question. See <u>Apokarina v. Ashcroft, 232 F. Supp. 2d 414 (E.D. Pa. 2002)</u> (Robreno, J.), *remanded by*, <u>93 Fed. Appx. 469 (3d Cir. 2004)</u> (Ambro, J.). The United States District Court for the District of New Jersey, that is, this Court, has expressly

---

[4] *See, e.g.*, <u>Gizzo v. INS, 510 F. Supp. 210 (S.D.N.Y. 2007)</u> (holding that the District Court loses jurisdiction under Section 1421(c) if the USCIS vacates its denial [even after petitioner filed his District Court action] because "there is no longer any *final* agency denial, which would trigger [the District Court's jurisdiction]" (emphasis added)); *cf.* <u>Saba-Bakare v. Chertoff, 507 F.3d 337 (5th Cir. 2007)</u>.

7

held that Section 1429 does not trump judicial review under Section 1421. *See Kestelboym v. Chertoff*, 538 F. Supp. 2d 813 (D.N.J. 2008) (Greenaway, J.), *reconsideration denied*, (June 17, 2008), (Doc. No. 22).[5] Generally, other federal authority is divided, although the clear weight of intermediate appellate authority is that Section 1429 trumps Section 1421.[6] *Compare, e.g.*, *Kestelboym v. Chertoff*, 538 F. Supp. 2d 813 (D.N.J. 2008) (holding that the District Court's Section 1421 authority to judicially review an administrative denial of a naturalization petition is not vitiated by pending removal proceedings), *and Ngwana v. Attorney General*, 40 F. Supp. 2d 319 (D. Md. 1999) (Motz, C.J.) (same), *with Zayed v. United States*, 368 F.3d 902 (6th Cir. 2004) (Nelson, J.) (dismissing petition for judicial review in circumstances where removal proceedings are pending).

In analyzing the purported conflict between Sections 1421 and 1429, this Court starts with the text. Section 1421(a) grants the AG sole authority to naturalize persons. Section

---

[5] Generally, scholarly treatises support the *Kestelboym* approach. *See, e.g.*, 3A C.J.S. *Judicial Review* § 1912 (2009) (explaining that pending removal proceedings and Section 1429 do not strip the District Courts of jurisdiction to review a final administrative denial of a naturalization application); RICHARD D. STEEL, STEEL ON IMMIGRATION LAW § 15:23 (2d ed. 2009) (same); *cf.* U.S. CITIZENSHIP & NATURALIZATION HANDBOOK § 8:30 (2009) (suggesting that the District Courts retain jurisdiction notwithstanding pending removal proceedings and Section 1429, but that the majority view, in such circumstances, is that the District Courts lack an effective remedy).

[6] Courts which hold that Section 1429 trumps Section 1421 are divided as to the effect of the interplay of the two statutory provisions. Some hold that the District Courts are stripped of *subject matter* jurisdiction, others hold that the District Court has jurisdiction over the subject matter, but that where administrative denial of the naturalization application was on the merits, the District Court has no effective remedy and, therefore, must dismiss on that basis.

1421(c) is a clear and express grant of jurisdiction to the District Courts to review *de novo* denials of naturalization applications if timely filed. Arguably, even apart from Section 1429, there is some tension between the two subprovisions of Section 1421. If Section 1421(a) grants the AG sole authority to naturalize persons, then what power may a District Court exercise in reviewing the AG's denial? If it can only affirm the denial, then judicial review is meaningless and the provision is effectively surplusage, i.e., without effect. Such interpretations are not favored. See *Ki Se Lee v. Ashcroft*, 368 F.3d 218, 223 (3d Cir. 2004) ("We start with the principle that if at all possible, we should adopt a construction which recognizes each element of the statute."). In light of this traditional maxim of construction, this Court gives the judicial review provision, Section 1421(c), its plain meaning. Notwithstanding Section 1421(a)'s grant of sole authority to naturalize persons to the AG, this Court may review such denials, and as stated in the statute, this Court may review both factual and legal issues de novo. In cases where the Court does not affirm the denial, if the record is insufficiently developed for the Court to render a final determination of the matter, this Court may: (A) remand to USCIS, or if the factual record is sufficiently developed, with or without a District Court hearing, the Court may (B) order the AG to naturalize the person, or, at the outer limit of this Court's authority, the Court may (C) order the person naturalized on its own authority. District Courts around the nation, even well after IMMACT came into force, have granted relief of all three types, notwithstanding Section 1421(a) granting the AG "sole" authority to naturalized persons. See, e.g., *Domingo Lora v. USCIS*, 1:05-04083, at *6

(E.D.N.Y. April 18, 2007) (Gleeson, J.) (granting petitioner's petition seeking de novo review of the USCIS's denial of naturalization – absent any remand order), (Dkt. No. 11), *vacated by on other grounds*, Clerk's Judgment (Sept. 17, 2007), (Dkt. No. 21); <u>Cacho v. Ashcroft</u>, 403 F. Supp. 2d 991, 998 (D. Haw. 2004) (Ezra, C.J.) (granting petitioner summary judgment in regard to INS's denial of naturalization, and "direct[ing] that the Petition for Naturalization be granted" absent any remand); <u>Jalloh v. INS</u>, Civil Action No. 02-1254, 2003 WL 22145308, at *9 (D. Minn. Sept. 15, 2003) (concluding that "Petitioner's application for naturalization should be granted [absent any indication of remand]" (emphasis omitted)); *cf.* <u>Tan v. Dep't of Justice</u>, 931 F. Supp. 725, 732 (D. Haw. 1996) (Ezra, J.) (reversing denial of application for naturalization and remanding application for processing as set forth by statute). In short, notwithstanding the AG having sole authority to naturalize persons, District Courts, exercising the traditional power of judicial review over final executive branch agency action, may remand denials to the administrative body to be carried out consistent with the court's order, or may order the AG to naturalize the applicant, or, at the limit of the court's authority, may naturalize the person on its own authority.

Section 1429 – which provides that "[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act ...." – complicates the analysis. This provision does not expressly remove jurisdiction from this Court; indeed, it does not even expressly address the courts at all. It is

a limitation on the AG's authority, not the courts'. The Respondents argue that it impliedly terminates this Court's jurisdiction, where, as here, removal proceedings have begun. *See* Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967) (Harlan, J.) ("[A] survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress ...."), *abrogated on other grounds by*, Califano v. Sanders, 430 U.S. 99 (1977). This conclusion seems particularly appropriate where Congress has (otherwise) authorized the most extensive level of judicial review found in our legal system. *See* Stark v. Wickard, 321 U.S. 288, 312-13 (Frankfurter, J., dissenting) ("There is no such thing as a common law of judicial review in the federal courts. The procedural provisions in more than a score of these regulatory measures prove that the manner in which Congress has distributed responsibility for the enforcement of its laws between courts and administrative agencies runs a gamut all the way from authorizing a *judicial trial de novo of a claim determined by the administrative agency* to denying all judicial review and making administrative action definitive." (emphasis added)).

Nevertheless the Respondents' argument that Section 1429 restricts this Court's Section 1421 jurisdiction is worthy of analysis, if only because any number of our sister courts have agreed with it. Citing Judge Robreno's district court decision in *Apokarina*, *supra*, the Respondents argue that the "scope of [the District Court's] review cannot be greater than [sic] the Attorney General's," and where the Attorney General has been

11

precluded by Section 1429 from reviewing the application for naturalization, it follows that the District Courts are likewise precluded from considering the petition where, as here, removal proceedings are pending. Opening Brief 8. The Respondents have exaggerated the holding of the *Apokarina* court. That District Court held: "It necessarily follows that the district court's scope of review of the denial of a naturalization petition [once removal proceedings have begun], pursuant to section 1421(c), cannot be any greater than the authority of the Attorney General to consider the petition *in the first place.*" Apokarina, 232 F. Supp. 2d at 416 (emphasis added). In other words, where USCIS has denied an application for naturalization on the merits, and its scope of review had not been limited in any way by Section 1429 prior to rendering a final decision, the scope of review of this Court is unaffected by changes related to removal proceedings which occur *after a final administrative decision is rendered* and after the administrative record is closed. Under *Apokarina*, this Court's scope of review is coextensive with the agency's final decision below. Of course, in some cases, where Section 1429 comes into play prior to final agency action, no final agency decision is rendered, and in those cases there is nothing for this Court to review. But that limitation on this Court's power to review flows directly from Section 1421(c), a jurisdictional provision, which limits district court review to final agency action.

The gravamen of the Respondents' position does not flow from the statutory text; rather, it is more of a legal intuition. The Respondents' position is that if the AG has no authority to grant the relief sought (by operation of Section 1429) and if the AG is the only

12

authority that has the authority to grant that relief, then this Court cannot grant the relief and it cannot order the AG to do so. This argument fails for two reasons. First, as already explained above, District Courts regularly reverse agency denials of applications for naturalization and do so absent any remand – notwithstanding IMMACT's provision according the AG "sole" authority to naturalize persons. But even if each and everyone of those courts erred, the Respondents' argument still fails. If this Court were to reverse the denial and order a remand, i.e., order the AG to naturalize the applicant, such an order would *not* run afoul of the limitation imposed by Section 1429. In the event removal proceedings have been instituted, Section 1429 precludes the AG from "consider[ing]" an "application for naturalization." In the circumstances just described, i.e., if this Court were to reverse the agency decision and order the AG to naturalize the applicant, the AG need not, and, indeed, should not, "consider" the Petitioner's application. At that juncture, the AG only need "consider" this Court's order, not the application itself. If the AG believes such an order were issued absent subject matter jurisdiction, the AG's remedy is to seek reconsideration and appellate review before an independent Article III court. *See Durfee v. Duke*, 375 U.S. 106, 112 (1963) ("In each of these [prior Supreme Court] cases the claim was made that a court, when asked to enforce the judgment of another forum, was free to retry the question of that forum's jurisdiction over the subject matter. In each case this Court held that since the question of subject-matter jurisdiction had been fully litigated in the original forum, the issue

13

could not be retried in a subsequent action between the parties.").[7] If another court of record cannot retry subject matter jurisdiction, it follows *a fortiori* that neither can the executive branch make such a determination on its own authority absent judicial review. In other words, if this Court determines it has jurisdiction and issues an order granting relief to Petitioner, that order determines the question of subject matter jurisdiction and the AG must comply. In that situation, the AG must "consider" the judicial order, not the application.

Indeed, this Court is at somewhat of a loss to understand precisely what Congress intended if it did not intend this result. If Congress wanted to preclude the AG from "granting" citizenship once removal proceedings have begun, then why use the term "consider"? The word "consider" and its variants have deep roots in coordinate federal statutes, rules, and regulations. *See, e.g.*, United States v. Fleming, 397 F.3d 95, 100 (2d Cir. 2005) (Newman, J.) (holding that the judicial duty to "consider" sentencing factors as established by Section 3583(e) of the commission's guidelines requires the judge to be "aware of both the statutory requirements and the sentencing range or ranges that are

---

[7] *See generally* RESTATEMENT (SECOND) OF JUDGMENTS § 12 (1982) ("When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if: (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction."); William Baude, *The Judgment Power*, 96 GEO. L.J. 1807 (2008).

arguably applicable"); *Central Valley Chrysler-Jeep v. Witherspoon*, 456 F. Supp. 2d 1160, 1173 (E.D. Ca. 2006) (Ishii, J.) ("[A] congressional requirement that a decision maker 'consider' a factor .... requires an actor to merely 'investigate and analyze' the specified factor, but not necessarily to act upon it."); *United States v. Haynes*, 265 F. Supp. 2d 914 (W.D. Tenn. 2003) (interpreting 18 U.S.C. §§ 3591(a), 3593(e), provisions controlling the imposition of the death penalty, and holding that "consider," as used in these provisions, means "[t]o fix the mind on, with a view to careful examination; to examine; to deliberate about and ponder over" (quoting BLACK'S LAW DICTIONARY 277 (5th ed. 1979))); *cf. Kontonotas v. Hygrosol Pharm. Corp.*, Civil Action No. 07-4989, 2009 WL 3719470 (E.D. Pa. Nov. 4, 2009) (Hart, M.J.) (opining on "consider" as used in Fed. R. Civ. P. 26(a)(2)(B), and noting that other courts have held that "consider" is interpreted broadly); *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005) (noting that the definition of "consider," under Rule 26(a)(2)(B), "exceeds the more narrow definition of 'relied upon,' referring instead to any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected"); *Vitalo v. Cabot Corp.*, 212 F.R.D. 472, 474 (E.D. Pa. 2002) (noting that the definition of "consider," under Rule 26(a)(2)(B), includes: "to reflect on: think about with a degree of care or caution; to think of, regard, or treat in an attentive, solicitous, or kindly way" (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 483 (1986))). In short, if Congress was using "consider" in Section 1429 as it used that term in

other statutes and as it is defined in any number of dictionaries, then should this Court grant Petitioner relief there will be no occasion for the AG to "consider" Petitioner's application. It follows then, that Section 1429 does not impliedly strip this Court of jurisdiction when removal proceedings are pending.

This Court's opinion is against the weight of appellate authority established in other circuits. For example, in <u>Zayed v. United States, 368 F.3d 902 (6th Cir. 2004)</u>, the Sixth Circuit held:

> [T]he restraints that § 1429 imposes upon the Attorney General prevent a district court from granting effective relief under § 1421© so long as removal proceedings are pending. The exclusive power to naturalize aliens rests with the Attorney General, as we have seen, and § 1429 bars the use of that power while removal proceedings are pending. In the case before us, then, the district court could not properly have ordered the Attorney General to grant Ms. Zayed's application for naturalization. And the district court could not properly have entered an order granting the application without reference to the Attorney General, Congress having decided that it would be the Attorney General who should have "sole authority to naturalize persons...." See <u>8 U.S.C. § 1421(a)</u>.

<u>Id.</u> at 906 (footnote omitted); <u>see also Ajlani v. Chertoff, 545 F.3d 229 (2d Cir. 2008)</u>; <u>Aye Aye Kyi v. Chertoff, Civil Action No. 08-3383, 2008 WL 5131619, at *3 (N.D. Cal. Dec. 5, 2008)</u> (denying relief because the court "could not order the Attorney General to do something precluded by statute"); <u>United States v. Ali, 757 F. Supp. 710, 713 (W.D. Va. 1991)</u>. Contrary to the *Zayed* court's opinion, Section 1429 does not preclude the AG from using his "sole" power to naturalize applicants once removal proceedings have begun. If Congress had intended that result, words to that effect were easily in reach. Instead, Congress

16

barred the AG only from "considering" a petitioner's application once removal proceedings have begun: no more and no less.

To sum up, federal district courts have, on occasion, held that notwithstanding the AG's having the "sole" authority to naturalize an applicant, a district court may naturalize a person under Section 1421(c)'s grant of jurisdiction. But even if that is not the case, even if a district court must remand to the AG who always retains the sole power to naturalize applicants, this Court may issue a remand order to the AG requiring the AG to naturalize an applicant, *notwithstanding the start of removal proceedings*, because such an order (should it be issued) does not require the AG to "consider" the Petitioner's application. *See De Lara Balaguer v. Schiltgen*, 378 F.3d 1042, 1046 (9th Cir. 2004) ("There is no hint in the language of § 1429 that it also applies to the courts [as opposed to merely the AG]."); *Grewal v. Ashcroft*, 301 F. Supp. 2d 692, 696 (N.D. Ohio 2004) (explaining that a District Court retains Section 1421 jurisdiction notwithstanding Section 1429 and coordinate removal proceedings, and that such a position is "consistent with the plain language of the statute"). In making this ruling this Court gives effect to Section 1421 and to Section 1429 and to each word and to each provision of Congress' statute.

## V.   CONCLUSION

For the reasons elaborated above, the Court **DENIES** the Motion.

An appropriate order accompanies this memorandum opinion.

William J. Martini, U.S.D.J.

DATE: January 14, 2010